Grafton,
No. 4524.

DONALD L. RECORD *v.* FRED WAGNER.

Submitted January 4, 1957.

Decided January 31, 1957.

420

*Robert A. Jones* for the plaintiff, furnished no brief.

*Black, Plante & Ellison* (of Vermont) and *Cotton, Tesreau & Stebbins* for the defendant.

DUNCAN, J. The record discloses no issue except the issue of the sufficiency of the evidence which was expressly reserved and transferred, and has been briefed by the defendant.

The findings of the Trial Court and the testimony, which in most respects was not conflicting, disclose the following facts. In 1953 and for some years prior, the defendant and two neighbors operated several farms in Lyme "as a cooperative," the exact nature of which was not disclosed. The defendant owned two of these farms, and the Court found that he hired David Berry to operate them. In 1953 and for several years previously, Berry and his family occupied the house on the main farm, and some twenty to twenty-five head of cattle were maintained there. The defendant occupied "the upper farm" for possibly a month or two, in 1953. For the balance of the year it was unoccupied. In 1953 Berry requested the plaintiff to bale the hay "on the hill," and he did so. At Berry's direction he made out his bill for $202.50 to the defendant, and gave it to Berry. The bill was paid by the defendant about a month later.

In the summer of 1954, Berry who still lived on the main farm asked the plaintiff if he would "bale the hay on the hill the same as last year." The plaintiff agreed, and baled hay on the same fields with one exception, made out his bill for $172.50 to the defendant and delivered it to Berry, who said he would send it to the defendant. In May 1955 the defendant returned to Lyme, and refused to pay the bill.

The defendant's testimony was that in 1953 Berry was working for the cooperative, and was authorized to cut the hay and have it baled, but after October 1953 "the cooperative no longer operated the farm," and the defendant then leased his farms to Berry. He retained title to "an undivided half" of the cows, and made "a conditional sales contract on half of the cattle" with Berry. Half of the milk check was paid to the defendant as "rent and applied against the purchase price of various things that he was buying from me." Berry was authorized to cut the hay in 1954.

The defendant gave no notice to the plaintiff of any new arrangement with Berry, and the plaintiff saw no change in the operation of the farm.

The Court found and ruled that the "defendant so conducted his farm property as to give the plaintiff the right to believe that Dave Berry was his agent and authorized to hire him to bale the hay in 1954." Thus it is clear that the defendant's liability as determined by the Trial Court was founded upon the apparent authority of Berry, his former agent. The sole issue is whether the evidence warranted the findings made.

In *Atto* v. *Saunders*, 77 N. H. 527, 528, 529, the question of whether a contract was within the "apparent scope" of authority of an agent was stated to be a question of fact "not susceptible of an exact or technical definition . . . . In general," the opinion states "it has been defined as follows: 'The apparent scope of an agent's authority is that authority which a reasonably prudent man, induced by the principal's acts or conduct, and in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have.' " Otherwise stated in *Davison* v. *Parks*, 79 N. H. 262, 263, by apparent scope "it is intended that the principal has either so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do, or that it is one agents in that line of business are accustomed to do." See also, *Edelstone* v. *Company*, 84 N. H. 315, 319. As was said in *Howison* v. *Bank*, 88 N. H. 31, 40: "It is not a question of authority in fact, but of reliance on appearances." These principles control even though an agency has terminated. "It is a familiar principle of law that . . . the authority of the agent to bind his principal continues, even after an actual revocation, until notice of the revocation is given . . . . " *Claflin* v. *Lenheim*, 66 N. Y. 301, 305.

Applying the law to the case before us, it is plain that the conclusion reached by the Trial Court was warranted by the evidence. By paying the 1953 bill, the defendant recognized Berry's authority to hire the plaintiff on the former's credit. Berry then resided on the defendant's farm, and was properly found the defendant's agent at that time, whether he was in fact hired by the defendant individually, or by some other member of the "cooperative" which could be found to have been a partnership. In 1954, Berry continued to reside on the main farm, and to all appearances was operating it in the same manner and in the same capacity. If in fact he had ceased to occupy the farm as agent, but did so as a tenant, the defendant made no effort to notify the plaintiff of the change in Berry's status.

It could be found that in the exercise of reasonable diligence the plaintiff was justified as a result of the defendant's conduct in believing that Berry had authority to pledge the defendant's credit in 1954 for the same services which the defendant recognized as a proper charge against himself in 1953. Whether in the latter year Berry's occupancy of the farm was "a mere incident to his carrying on the farm" (*Mead* v. *Owen,* 80 Vt. 273, 278; *Guiel* v. *Barnes,* 100 Conn. 737) or that of a tenant is unnecessary to determine. The important fact is that the defendant permitted the outward appearances of Berry's authority to remain unchanged in 1954 from what they were in 1953, and by not notifying the plaintiff of the termination of the agency permitted the plaintiff to be misled. Having done so, he rather than the plaintiff should bear the loss. *Beard* v. *Kirk,* 11 N. H. 397, 403; *Nixon* v. *Brown,* 57 N. H. 34. Under comparable circumstances before the court in *North Chicago Rolling Mill Co.* v. *Hyland,* 94 Ind. 448, the defendant was held liable for an obligation incurred by a former agent after he had become the defendant's tenant without notice to the plaintiff of the change of status. The verdict in the case before us is supported by authority generally. *Claflin* v. *Lenheim,* 66 N. Y. 301, *supra;* Mechem, Outlines of Agency (4th *ed.*) s. 284, and cases cited; Restatement, Agency, ss. 27, 69, 73, 136(2), 261. We do not consider the circumstance that Berry had previously pledged the defendant's credit upon only one occasion (*Smith &c. Co.* v. *Company,* 130 N. Y. S. 136) to be of controlling importance. *Anderson* v. *Johnson,* 74 Minn. 171. See also, *Rice* v. *James,* 193 Mass. 458, 464; *Goldfein* v. *Continental Ins. Co.,* 125 Neb. 112. The evidence that no question of the agent's authority was raised

on that occasion, coupled with the evidence of the misleading circumstances of his continued occupancy and management of the farms and the cattle in the defendant's continued absence, was sufficient to warrant the verdict.

*Judgment for the plaintiff.*

All concurred.