Hillsborough,
No. 6222.

Horseshoe Fish & Game Club

*v.*

Merrimack Village District *&a.*

Merrimack Village District

*v.*

Horseshoe Fish & Game Club *&a.*

March 31, 1972

*Craig & Wenners* (*Mr. Vincent A. Wenners, Jr.* orally) for Horseshoe Fish & Game Club.

*Stein & Gormley* for James Bigwood, Kenneth E. Marston, and Michael Petruizzullo, filed no brief.

*Harkaway, Gall & Shapiro* (*Mr. Aaron A. Harkaway* orally) for the Merrimack Village District, Seth J. Huidak, Henry W. Therriault, and specially for Ronald E. Geiger.

GRIMES, J. The main question in this case is whether a lease of land owned by the Horseshoe Fish & Game Club to the Merrimack Village District is invalid due to lack of authority of those executing the lease. The action by the club seeks to have the purported lease declared null and void. The action by the district is to have the club restrained from removing gravel and topsoil. There are individual parties in each action, but they are the officers of the district and the club and the trucking company which has been removing the gravel.

The club contended that the persons who executed the lease for the club were not legally elected, had no authority to act and the lease defeated the purposes of the club. The matter was heard before a Judicial Referee, *Amos N. Blandin, Jr.*, who made certain findings including the finding that those who executed the lease for the club were at least de facto officers and had apparent authority to do so. He recommended that the petition of the club be dismissed and in the action of the district, that the club, its officers and agents be restrained from removing gravel, fill or topsoil. The club's exceptions to the court's decree in accordance with the recommendation of the judicial referee were reserved and transferred by *Loughlin, J.*

The Horseshoe Fish & Game Club is a corporation organized under New Hampshire laws for the general purposes of promoting the sports of hunting and fishing. It owns land upon which there is a 40-acre pond and a club house. The referee found and the record reveals that due to lack of interest over a period of time, the affairs of the club, including its finances, had become critical by 1966 and worsened in 1967. Meeting after meeting failed to produce a quorum of eleven members as the bylaws required. The club was unable to meet its obligations, but proposals to sell some of the land to raise money were defeated.

On several occasions beginning as early as October 6, 1967, and continuing from time to time until the latter part of 1968, the question of the district's acquiring rights by purchase or lease of the club land was discussed at club meetings. At a meeting of the club on April 5, 1968, it was voted

to authorize the officers to "negotiate with the Merrimack Village District in the near future". At a May 1968 meeting, it was reported that the district had met all the demands of the officers and that the district was paying the club's mortgage payments as a gesture of good will. At the November 15, 1968 meeting, it was reported that the district was having a lease drawn in accordance with a draft that had been approved by the negotiating committee. During this whole period of time the district was proceeding openly with public meetings to authorize the execution of the lease on its behalf. On December 2, 1968, Michael Petruizzullo, James Bigwood and Kenneth E. Marston signed the lease in question, purporting to be acting on behalf of the club. Petruizzullo had been elected president and Marston secretary for the ensuing year at a meeting held December 1, 1967. Bigwood had been appointed treasurer due to a resignation at the meeting on November 15, 1968, when it was voted to cancel nominations and election of officers and regular meetings until spring due to lack of interest and to close the club to save money.

The club bylaws provide that a vote of two-thirds of the members is required to sell any of the club property. No such vote authorized the lease in question. However, a set of bylaws, copies of which were made by a member and distributed to the membership sometime prior to August of 1967, contains a provision which authorizes a majority of the officers to rent or lease any of the properties of the club. There appears to be another set of bylaws in the minute book not containing this provision. A copy containing the provision was furnished to the district before execution of the lease. Although it is now contended by the club that the true bylaws contain no such provision, these copies which did contain it were known by club members to be in general circulation for well over a year before the execution of the lease without any action being taken and without any warning or notice being given to the district that there was a claim that the officers did not have authority to execute a lease.

The lease in question is for 99 years and covers all the club property of about 140 acres, the pond and buildings. Its purpose, so far as the district is concerned, is to protect

the watershed. The club members are still allowed to continue to use the premises as before to carry out the purposes of the club with certain restrictions against adversely affecting the source of water supply, including not swimming in the pond. The district agreed to and has made the payments on the club mortgage of $4,468.62, the taxes, the insurance and the rent of $1.00 per year. It also agreed to do certain work, such as raising the level of the pond by a gravel dam, improving the road and parking areas. In view of the pending action the district has understandably suspended this work. The lease also provides that the district will have the privilege of first refusal to purchase the property during the term of the lease if not in default. This did not bind the club to sell but only gave the district the right of first refusal if the club should ever decide to sell; therefore the lease does not amount to a sale and does not come within that provision of the bylaws requiring a two-thirds vote of members to sell club property.

We hold that the judicial referee's finding that the persons who signed the lease for the club had apparent authority was supported by the evidence. Apparent authority exists where the principal so conducts himself as to cause a third party to reasonably believe that the agent is authorized to act. *Reed* v. *Linscott,* 87 N.H. 139, 175 A. 240 (1934); *Record* v. *Wagner,* 100 N.H. 419, 128 A.2d 921 (1957); Restatement (Second) of Agency *s.* 8 (1958). Here the persons who participated in the negotiation and those who signed the lease were at least de facto officers, and two of them had acted in their capacity after an election for a year without objection. *Gleason* v. *Insurance Co.,* 73 N.H. 583, 587, 64 A. 187 (1906). The club was in financial difficulty and interest had declined to where it was difficult to get a quorum. The members authorized the officers to negotiate a lease and knew, or should have known, an agreement had been reached. The members knew copies of bylaws giving the officers authority to lease club property were in circulation, but did nothing to warn the district of any claimed invalidity. The lease itself appeared beneficial to the club, which retained all property rights necessary for its purposes. Although some district officers were also club members, the evidence justified a find-

ing that they were token members, not possessed of information preventing reliance on the club officers' apparent authority.

The judicial referee found that the persons who negotiated the lease were not guilty of fraud. The club contends that this finding cannot stand because the issue was reserved at trial and not litigated. Although it appears that the issue of damages was reserved at trial until it had been determined whether the lease was valid it does not appear that fraud as it related to the validity of the lease was reserved and the finding must stand.

*Exceptions overruled.*

LAMPRON, J., did not sit; the others concurred.

ON MOTION FOR REHEARING: After the foregoing opinion was filed the plaintiff club filed a motion for rehearing.

*Craig & Wenners* for the motion.

*Harkaway, Gall & Shapiro* opposed.

GRIMES, J. In its motion for rehearing plaintiff relies upon RSA 294:41 which applies to stock corporations which are organized to carry on business for profit (RSA 294:1) and provides that they may sell or lease "all" their property, including good will, by a two-thirds vote of the stockholders present and voting.

RSA ch. 292, under which plaintiff was organized, provides in section 4 that voluntary corporations organized thereunder "shall have all the rights and powers and be subject to all the duties and liabilities of other similar corporations . . . . " *See* RSA 295:7 and 7-b.

RSA 294:41 does not apply to the plaintiff for the reason among others that it is not organized for profit and is therefore not a corporation "similar" to business corporations to which RSA 294:41 applies.

*Motion denied.*

All concurred.