Strafford
No. 86-409

## Anthony Demetracopoulos

v.

## Strafford Guidance Center

December 31, 1987

*Clark, Cook & Molan P.A.*, of Concord (*Robert T. Clark* on the brief and orally), for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon P.A.*, of Dover (*William H. Shaheen* on the brief, and *Dorothy M. Bickford* orally), for the defendant.

THAYER, J. The plaintiff appeals from a report by the Master (*Russell F. Hilliard*, Esq.), as approved by the Superior Court (*Nadeau*, J.), finding that the defendant's agent was without either actual or apparent authority to enter into a personal services contract with the plaintiff, and that thus the personal services contract in question was not binding on the defendant. We affirm.

The defendant, Strafford Guidance Center (SGC), is a non-profit corporation which receives funding from the State in order to provide mental health services. The plaintiff, Anthony Demetracopoulos, commenced formal employment with SGC in May 1980, as a business manager, following a period of work as a consultant. In

the fall of 1980, the plaintiff was elected to the New Hampshire Legislature. The plaintiff and Bern Anderson, executive director of SGC, agreed that the plaintiff would terminate his formal employment with the defendant, but that the plaintiff would continue to perform work for the defendant as a consultant. Around April 5, 1981, Demetracopoulos resumed full-time employment with SGC. His position was specified as Assistant Director for Administration and Control, and his grade and salary level were specified as level X.

In August, 1981, Demetracopoulos entered law school. Anderson and Demetracopoulos agreed that the latter would continue to work part-time at SGC, and receive 80% of his former salary. In early 1982, the plaintiff and Anderson negotiated an employment contract. Later that year, on August 2, 1982, Anderson and Demetracopoulos signed a document entitled "Personal Services Contract." This contract contained a variety of provisions that distinguished it significantly from all other employment agreements at SGC; namely:

1. The contract was to last for three years.

2. The contract contained a provision for automatic raises of at least five percent per year.

3. The contract stated that Demetracopoulos would be paid at salary grade XI, although the SGC's personnel policies manual described Demetracopoulos' position as salary grade X.

4. The contract provided that, in the event Demetracopoulos was dismissed, suspended or demoted, an independent arbitrator would be appointed to review the action taken. Even if the arbitrator sustained the actions of the guidance center, Demetracopoulos would receive a year's salary and fringe benefits, or 80% of the cash equivalent of the remainder of the contract, whichever was greater.

At no time did Anderson obtain approval of the contract from the SGC board of directors (board). During the summer of 1982, the New Hampshire Attorney General's Office executed a search warrant at SGC, and seized its medical and financial records. In response to the attorney general's investigation, the board hired a certified public accountant (CPA) to audit SGC's records. The CPA disclosed to the board the existence of the personal services contract that Anderson and Demetracopoulos had engineered. The discovery

of the contract disturbed the board, and it reacted by dismissing both Anderson and Demetracopoulos.

Demetracopoulos brought suit under the contract to compel the naming of an arbitrator, and the defendant brought a cross petition seeking a declaratory judgment on the validity of the contract. After hearings on February 21 and 28, 1986, the master found that Anderson had neither actual nor apparent authority to enter into the personal services contract with the plaintiff on the defendant's behalf. Consequently, the master held that the contract was not binding on the defendant.

The plaintiff argues on appeal that the master erred in concluding that Anderson was without actual or apparent authority to enter into a personal services contract with the plaintiff. He argues that Anderson had express authority to bind SGC pursuant to the by-laws and Personnel Policies Manual (manual). The plaintiff argues further that Anderson had implied authority in his capacity as executive director and as an incident of the express authority that the by-laws and manual granted. In the alternative, the plaintiff claims that Anderson had apparent authority based on the plaintiff's reasonable belief in reliance upon alleged statements of the board.

The defendant's counter-argument is that Anderson grossly exceeded the scope of his express authority as executive director by substantially deviating from the manual's guidelines. Furthermore, the defendant contends that Anderson had no implied authority because the contract was not a necessary or reasonable incident to his express authority, and he could not have reasonably believed that it was. Finally, the defendant argues that it was not reasonable for the plaintiff to believe under the circumstances that Anderson had apparent authority. The defendant maintains, therefore, that the master's ruling was correct and should be upheld. We agree.

Before we begin our analysis of Anderson's authority as executive director, we must address a further alternative theory raised by the plaintiff. He argues that the Court need not reach the issues of actual or apparent authority if, instead, it directs the reformation of the contract through deletion of the offensive language of the contract; namely, the liquidated damages or "golden parachute" provision. If the contract were to be reformed, the plaintiff contends, an arbitrator could fashion an appropriate remedy.

This argument, as the defendant correctly notes, overlooks the obvious fact that Anderson's authority was put in issue by defendant's petition for a declaratory judgment as to the validity

of the contract. Since an arbitrator's authority to hear the case would derive solely from the contract, a determination of the contract's validity in the first instance is essential.

■■ On the merits of the issue, moreover, reformation is inappropriate in this case. Contract reformation generally requires proof by clear and convincing evidence of: (1) an actual agreement between the parties; (2) an agreement to put the agreement in writing; and (3) a variation between the prior agreement and the writing. *Midway Excavators, Inc. v. Chandler, Comm'r*, 128 N.H. 654, 657–58, 522 A.2d 982, 984 (1986). There is nothing in this case that would suggest that a variation existed between the agreement reached by Demetracopoulos and Anderson and the written personal services contract. The plaintiff attempts to explain that the "golden parachute" clause was not intended to be read literally, and therefore the parties were not in actual agreement as to its meaning. The plaintiff's own testimony vitiates his theory, however, because the plaintiff stated on cross-examination that the contract clause means nothing more than what it actually says.

■ On the issue of Anderson's authority to enter into the contract with the plaintiff on behalf of SGC, we note first the standard of review to be applied in this case. The existence of authority is a question of fact. *Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 517, 389 A.2d 933, 936 (1978); *see also Norberg v. Fitzgerald*, 122 N.H. 1080, 1082, 453 A.2d 1301, 1303 (1982) (authority of attorney to bind client to settlement agreement). We will not disturb the findings of the master unless they are unsupported by the evidence or are erroneous as a matter of law. *Gauthier v. Robinson*, 122 N.H. 365, 368, 444 A.2d 564, 566 (1982). The master's findings are supported by the evidence when the record discloses "evidence from which a reasonable person could have made such findings." *Town of Plaistow v. Nadeau*, 126 N.H. 439, 442, 493 A.2d 1158, 1161 (1985).

The plaintiff concedes that the master applied the appropriate principles of agency law. His contention is that the master's findings of fact were incorrect, and that therefore his rulings were erroneous.

■■ Actual authority can be either express or implied. Express authority arises when the principal, here SGC, explicitly manifests its authorization of the actions of its agent. *See* RESTATEMENT (SECOND) OF AGENCY § 7, comments *a–c*, and § 26, comments *a–c* (1958); *see also Sinclair v. Town of Bow*, 125 N.H. 388, 393, 480 A.2d 173, 176 (1984). In this case, the express authority of Anderson

as executive director derived from SGC's by-laws and manual. *See Daniel Webster Council, Inc., BSA v. St. James Assoc., Inc.* , 129 N.H. 681, 533 A.2d 329 (1987). Article X of the by-laws establishes and describes the position of the executive director. With respect to personnel matters, article X states, in pertinent part:

> "Section 4. The Executive Director shall have authority to select employees and to dismiss employees when their services are no longer needed or are unsatisfactory.
>
> Section 5. The Executive Director may authorize all regular expenditures within the duly adopted budget. Other expenditures at variance with the budget may be authorized by the Board upon recommendation of the Finance Committee. . . ."

Section 1 of article X provides that the executive director "will be responsible to and under the direction of the Board." The executive director's hiring responsibilities are further limited by the manual's guidelines, which specify, among other things, salary grade levels, pay increases, and dismissal and grievance procedures.

The master found that Anderson exceeded his express authority in several respects. First, the contract purported to exempt Demetracopoulos from certain requirements in the manual. For example, the arbitration clause supposedly overrode the dismissal and grievance procedures set forth in the manual. Second, the contract established a multi-year guaranteed minimum pay increase schedule in contravention of the manual's provisions. Third, the board had no opportunity to review the contract prior to its execution, although that had been the board's previous practice with respect to contracts for professional employees. Finally, the "golden parachute" clause, if not in direct contravention of the manual, was certainly not contemplated by it and, as the master noted, was patently unfair to SGC.

■ Our review of the record leads us to conclude that the master's findings are clearly supported by the evidence. The plaintiff relies on what he construes as broad discretionary hiring authority vested in Anderson by the by-laws and the manual. Although Anderson did have authority to hire and dismiss employees, that authority was limited by the manual guidelines. Each of the contract clauses set forth above was in direct contravention of the manual, beyond the scope of the specific guidelines, or so far contrary to the best interests of SGC as to be deemed patently unfair. The board, moreover, did not specifically authorize or approve the contract.

In arguing that Anderson did not need specific board authorization or approval, the plaintiff relies partly on Anderson's contract dealings with a Dr. Berkowitz. The facts of that transaction, however, suggest otherwise. The board gave Anderson specific authority to hire a psychiatrist trained in deinstitutionalization, and to go beyond the applicable salary grade if necessary. Pursuant to the board's authorization, Anderson hired Dr. Berkowitz, although he was ultimately chastised by a majority of the board for exceeding a pay scale that the board thought was appropriate. In contrast, the board did not give Anderson specific authorization to rehire Demetracopoulos, or to do so under terms that substantially deviated from the manual.

■■ The master also found that Anderson lacked implied authority to bind SGC. Implied authority "'follows as a reasonable incident or construction of the terms' of express authority, . . . or results from acquiescence by the principal in a course of dealing by the agent." *Sinclair v. Town of Bow*, 125 N.H. at 393, 480 A.2d at 177 (quoting *Reed v. Linscott*, 87 N.H. 139, 140, 175 A. 240, 241 (1934)). In determining whether implied authority exists, the court focuses "upon the *agent's* understanding of his authority: whether the agent reasonably believed, because of conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him so to act." *Id.* (quoting *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 670 n.7 (D.C. App. 1983)) (emphasis in original).

■ The master's findings on this point are clearly supported by the evidence. Any implied authority vested in Anderson would be limited to that which can be gleaned, under the standard enunciated above, from the express policies of the manual. Given the extent to which this contract exceeded the guidelines of the manual, however, there was no express authority from which authority might be implied as a reasonable incident or construction. *See* 3 AM. JUR. 2d *Agency* § 77, at 582 (1986). In addition, the past admonitions of the board as a result of the Berkowitz contract, coupled with the patently unfair terms of the contract, indicate that Anderson could not reasonably have believed that he had authority to conclude such a contract.

■■ Finally, the master found no apparent authority for Anderson to bind SGC to this contract. We have defined apparent authority as that authority which "exists where the principal so conducts himself as to cause a third party to reasonably believe that the agent is authorized to act." *Horseshoe Fish & Game Club v.*

*Merrimack Village Dist.*, 112 N.H. 94, 97, 291 A.2d 251, 253 (1972); *Record v. Wagner*, 100 N.H. 419, 421, 128 A.2d 921, 923 (1957). In other words, apparent authority is:

> "that authority which a reasonably prudent man, induced by the principal's acts or conduct, and in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have."

*Atto v. Saunders*, 77 N.H. 527, 529, 93 A. 1037, 1039 (1915).

 The plaintiff asserts that he came to believe that Anderson had authority after reading a newspaper article in which a member of the board was reported to have said that Anderson had complete control over the hiring and dismissing practices of SGC. Despite the article, the master found, and we agree, that it was unreasonable for Demetracopoulos to believe that Anderson had apparent authority. Demetracopoulos was aware of the limitations on Anderson's hiring authority because Demetracopoulos assisted in preparing the manual guidelines. Further, the record would support the conclusion that Demetracopoulos had access to the board and could have ascertained the extent of Anderson's authority. Finally, it would have been unreasonable for Demetracopoulos to conclude that Anderson had the authority to bind SGC to, or that the board would approve, a contract containing terms that were patently unfair and wholly unfavorable to SGC.

 We cannot say, based on the record before us, that the master's findings were unsupported by the evidence or erroneous as a matter of law. Accordingly, the decision of the master as approved by the superior court is affirmed.

*Affirmed.*

All concurred.