Merrimack
No. 90-464

THE STATE OF NEW HAMPSHIRE

v.

JEFFREY WESTCOTT

October 9, 1991

*John P. Arnold*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

*New Hampshire Legal Assistance*, of Manchester (*Elliott Berry* on the brief and orally), for the defendant.

HORTON, J. The defendant appeals an order of the Superior Court (*Manias*, J.) recommitting him to the psychiatric acute care

facility of the New Hampshire Hospital. He argues that, although the trial court did not err in ordering him recommitted, it was nonetheless error for the court not to approve his transfer to the transitional housing service ("THS"), a less-restrictive facility located on the grounds of the New Hampshire Hospital. He further maintains that it was likewise error to refuse to expand his level of patient privileges, in the face of medical evidence that such a treatment plan would be clinically appropriate for the defendant and would provide adequate monitoring of his condition. For the reasons set forth below, we affirm the trial court's decision.

In 1979, the defendant was found not guilty by reason of insanity in the drowning death of his three-year-old son. He was thereafter committed to the New Hampshire Hospital where, save for a brief administrative transfer of no consequence to this opinion, he has remained for over eleven years.

In 1990, the State moved for recommittal pursuant to RSA 651:11-a, I. A summary of the evidence presented during the July 1990, two-day hearing on this motion highlights the defendant's contention in this appeal. At the time of the recommittal hearing, the defendant's prescribed treatment involved a monitored daily regimen of tegretol and lithium to control his disorder; failure to adhere to this regimen may result in "decompensation," a relapse into a disturbed mental state. Although he resided in the psychiatric acute care facility at the time of the hearing, the defendant was allowed unescorted building privileges from approximately 8:00 a.m. to 10:00 p.m., two hours of unescorted off-grounds privileges per day, and ten hours of escorted grounds privileges per week. Earlier, between 1983 and 1984, the defendant had enjoyed extensive off-grounds privileges, which included his access to his own apartment and automobile. While he appears never to have abused these privileges, he decompensated twice during this period. In the latter of these two episodes, the defendant had to be involuntarily medicated because of the threat he posed to himself and to the hospital staff. There were also several incidents involving denial behavior, psychotic delusions, and mild decompensation between 1987 and 1990.

One of the witnesses at the July 1990 hearing, the director of the department of corrections' division of medical and forensic services, evaluated the defendant in May 1990, and testified that the defendant had difficulty admitting to his condition and recognizing the onset of decompensation. The director also provided the court with general evidence concerning the effects of the defendant's bipolar disorder, including the tendency of patients with this condition to

stray from medication. It was his opinion that without supervision the defendant might not take his medication, and without his medication, the defendant might commit crimes. Like the other medical expert witnesses, however, the director supported placing the defendant in THS because he believed the supervision in that facility would be adequate, and he gave his opinion that such a transfer would not pose a threat to the public. Other medical expert testimony suggested that the defendant, despite the undisputed need for daily, supervised, psychotropic medication, is clinically stable.

Following the trial, the court issued an order stating that "the history of the defendant's behavior during his commitment demonstrates his and the community's need for the safeguards his present supervised setting [*i.e.*, the acute care psychiatric ward] provides." The court found that the "restrictions imposed by the defendant's present residence are appropriate in view of his mental disorder and the concerns of the statute and that a less restrictive alternative is neither appropriate nor required." Accordingly, it ordered the defendant recommitted and refused to approve the gradual release transitional plan offered by the defendant.

The present appeal stems from this refusal to approve the defendant's proposed plan. The plan included both a transfer to the less-restrictive setting of THS and a schedule which would have gradually increased the defendant's on- and off-grounds privileges. The defendant argues on appeal that the trial court abused its discretion and erred in failing to heed the unanimous opinions of the medical experts, each of whom gave his or her opinion that, although unconditional release of this defendant into the general community would not be prudent, the proposed transitional plan represented an appropriate disposition of the case.

■ The trial court's authority in passing upon a request for less-restrictive committal conditions derives from a 1987 amendment which added paragraph IV to RSA 651:11-a (Supp. 1990). That paragraph provides in part:

"IV. The following provisions shall apply after the court renews the order of committal pursuant to paragraph I of this section:

(a) If the court renews the order but finds by clear and convincing evidence that the person's release under certain conditions, including, but not limited to, a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily

injury to himself or another person or serious damage to property of another, the court may:
(1) Order that he be conditionally discharged under conditions the court finds appropriate . . . ."

Because the trial court had the first and best opportunity to observe and assign credibility to the evidence presented, our standard of review requires that we uphold its findings unless they are unsupported by the evidence or are erroneous as a matter of law. *Town of Barrington v. Gadd*, 132 N.H. 650, 654, 569 A.2d 231, 233 (1990). In this case, the defendant urges that the determination whether to grant requested terms of conditional release should give the highest possible deference to the opinions of medical personnel because conditional release, as opposed to an unsupervised release into the general community if recommittal under RSA 651:11-a, I, is not ordered, is an internal treatment issue solely within the expertise of the attending medical staff. If this qualification were to be applied to the present case, the defendant argues, the decision of the trial court would be clearly unreasonable, as all of the medical experts asked to present evidence supported some form of transfer to THS with an increase in the defendant's patient privileges.

We are cognizant of the need to evaluate medical conditions uncommon to everyday experience with the assistance of informed medical evidence. *See, e.g., Petition of Dunlap*, 134 N.H. 533, 543, — A.2d —, — (1991). Nonetheless, the cautious but favorable prognoses presented by the expert medical witnesses at this trial were not the definitive answer to the question presented for the trial court's review; namely, whether the defendant's "release under certain conditions . . . would no longer create a substantial risk of bodily injury to himself or another person or serious damage to the property of another . . . ." RSA 651:11-a, IV (Supp. 1990).

This question is analogous to, and receives the same standard of review as, the threshold determination under RSA 651:11-a, I: whether the court is "satisfied by clear and convincing evidence that the person suffers from a mental disorder and that it would be dangerous for him to go at large. . . ." In the first instance, "'the determination of mental disease and dangerousness are matters for the trial court to decide and . . . the opinions of experts are not necessarily dispositive.'" *State v. Robb*, 125 N.H. 581, 585, 484 A.2d 1130, 1133 (1984) (quoting *State v. Paradis*, 123 N.H. 68, 71, 455 A.2d 1070, 1072 (1983)). Dangerousness is a legal, not a medical, concept, and the commitment process properly includes lay judgments concern-

ing the likelihood that release of a defendant may prove hazardous to him or her or to the community. *Robb supra; see also Humphrey v. Cady*, 405 U.S. 504, 509 (1972). No compelling argument has been presented by this appeal that the determination under paragraph IV of RSA 651:11-a, whether there remains substantial risk of personal injury or property damage should the defendant be conditionally released, should not also be a determination within the discretion of the trial court.

■ Here, there was testimony demonstrating that, although the defendant had not abused any of his off-grounds privileges and appears generally cooperative with the medication program, he was still susceptible to violent decompensation episodes and that he appears incapable of recognizing the onset of these episodes and seeking medical assistance in a timely fashion. Under the facts of this case, the evidence presented was sufficient to support the trial court's conclusion that the terms of the conditional release sought by the defendant did not clearly and convincingly negate a present substantial risk of personal injury or property damage, and this conclusion was not clearly erroneous as a matter of law. Accordingly, there was no error in the trial court's order withholding approval of the proposed treatment plan, and the order is affirmed.

*Affirmed.*

All concurred.