**William Ural v. Clifford Levy**      **CV-01-215**     **06/30/03**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**William Ural, M.D.,
and Sue Ural**

    v.                                Civil No. 01-215-B
                                                Opinion No. 2003 DNH 114

**Clifford M. Levy, M.D.,
Concord Orthopedics, P.A.,
Keith R. Nichols, M.D.,
Anesthesia Associates, P.A.,
R. Sanborn, C.R.N.A., and
Concord Hospital**

### MEMORANDUM AND ORDER

The plaintiffs, Doctor William Ural and his wife, allege that the defendants negligently administered anesthesia to Dr. Ural during spine surgery. As a result, Dr. Ural contends that he suffered irreversible damage to his vision. The plaintiffs claim that Concord Hospital is vicariously liable for the acts of defendants Keith R. Nichols, M.D., and R. Sanborn, C.R.N.A. Concord Hospital moves for summary judgement, arguing that Dr. Nichols and Sanborn were not employees of the Hospital and otherwise lacked the actual or apparent authority to act as its agents. I grant the Hospital's motion (Doc. No. 19).

## I. BACKGROUND[1]

Dr. Ural is a urologist who operated a solo practice in Middlebury, Vermont. Apparently in need of spine surgery, Dr. Ural selected Clifford Levy, M.D., to perform the operation. Prior to his surgery, Dr. Ural met with Dr. Levy to discuss the procedure. Dr. Levy proposed to perform the spine surgery at Concord Hospital because he had staff privileges there. Dr. Ural agreed. Although the operation did indeed take place at Concord Hospital, it is undisputed that Dr. Levy is not an employee, agent or representative of Concord Hospital, and that his office is wholly separate and distinct from the Hospital.

Dr. Nichols and Sanborn, employees of defendant Anesthesia Associates, provided the anesthesia services for Dr. Ural's surgery. Anesthesia Associates and its employees provide such services to Concord Hospital under an agreement which states that Anesthesia Associates is an independent contractor who ". . . agrees that neither it, nor any of its Providers, employees or agents, will hold themselves out or represent to anyone that they or any of them are agents, employees or other representatives of

_____

[1] The background facts are cast in the light most favorable to the non-moving party.

the [Concord] Hospital." Dr. Ural does not recall whether Dr. Nichols or Sanborn ever held themselves out as employees or agents of Concord Hospital. The plaintiffs do not dispute the fact that Dr. Nichols and Sanborn were not employees or actual agents of Concord Hospital.

One day prior to surgery, Dr. Ural signed a Concord Hospital consent form that stated "I understand that many of the physicians on staff of this hospital are not employed by the hospital, nor are they agents of the hospital. They are independent practitioners." Although Dr. Ural did not read the entire consent form and could not recall its terms, he nonetheless intended to go through with the operation "in spite of the fact that [he] didn't read the consent form."

On the day of surgery, Sanborn met with Ural in the pre-operative "holding" room. Sanborn testified at his deposition that he did not consider himself an employee of the Hospital and did not tell Ural that he was employed by the Hospital. However, he also testified that he told Dr. Ural that he was "a certified registered nurse anesthetist working in the department of anesthesia at Concord Hospital." Dr. Levy also spoke with Dr. Ural prior to the operation. Dr. Levy did not recall what he

told Dr. Ural, but he testified that he ordinarily tells patients that anesthesia will be provided by individuals who "work at the hospital," but are not employed by the hospital.

The plaintiffs' complaint alleges that the negligent conduct of Dr. Nichols and Sanborn in providing anesthesia caused Dr. Ural's injuries. They argue that Dr. Nichols and Sanborn were agents of the Hospital under the theory of apparent authority. As such, they conclude that the Hospital is vicariously liable for the acts of Dr. Nichols and Sanborn.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

-4-

In ruling upon a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

### III.  ANALYSIS

Apparent authority may arise when the acts and appearances of a principal lead a reasonably prudent person to believe that an agency relationship exists between the principal and another. Demetracopoulos v. Strafford Guidance Ctr., 130 N.H. 209, 215-16 (1987).  Such authority must be "induced by the principal's acts or conduct," and not from the representations of the alleged agent.  Id. (quotation omitted); see also Daniel Webster Council, Inc. v. St. James Ass'n, Inc., 129 N.H. 681, 683 (1987).  In evaluating a claim of apparent authority, a court must ascertain whether a reasonably prudent person "in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge," would be justified in assuming that the actions of the principal vested the alleged agent with the authority to perform the act in question.  Demetracopoulos, 130 N.H. at 216 (quotation omitted); Daniel Webster Council, Inc., 129 N.H. at 683; see also Restatement (Second) of Agency § 27 (1958) ("apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal

which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf" by the purported agent).

The plaintiffs have failed to present a genuine issue of material fact that Concord Hospital vested Dr. Nichols and Sanborn with apparent authority. Based on the record before me, there is no evidence that Concord Hospital performed any act or maintained any appearances which would lead a reasonable person to conclude that Anesthesia Associates and its employees had the apparent authority to provide services at the behest of the Hospital.

The only evidence presented that Dr. Nichols and Sanborn were agents of the Hospital flows from the statement of Sanborn that he worked "in the department of anesthesia at Concord Hospital." Of course, apparent authority must flow from the acts or appearances of the principal (Concord Hospital), not the alleged agent (Sanborn). See Demetracopoulos, 130 N.H. at 216; Daniel Webster Council, Inc., 129 N.H. at 683. Also, Dr. Ural does not recall Sanborn's statement. His reason for believing that Anesthesia Associates and its employees were "related" to

Concord Hospital is based solely on an unsupported assumption, not any particular act or appearance of the Hospital. Aside from mere assumption, there is no evidence in the record indicating what caused Dr. Ural to believe that the Hospital consented to have the anesthesia services provided on its behalf by Dr. Nichols and Sanborn.

Furthermore, Dr. Ural selected Dr. Levy, who is not an employee or agent of the Hospital, to perform the surgery. Dr. Levy proposed that the operation be performed at Concord Hospital because he had privileges there. Dr. Ural met with Dr. Levy at his office, not at the Hospital, and discussed the operation and its risks. Dr. Levy testified that he most likely informed Dr. Ural that the individuals that assist him with operations were not employed by the Hospital, but that he trusted them and recommended their services. Lastly, Dr. Levy had Dr. Ural sign a consent form that indicated that many of the physicians on staff at the Hospital were not its employees or agents. Under the circumstances, a reasonably prudent person "in the exercise of reasonable diligence and sound discretion, under similar circumstances . . . and with like knowledge," would not be

justified in assuming that the actions of the Hospital vested Dr. Nichols or Sanborn with the authority to perform the act in question. Demetracopoulos, 130 N.H. at 215-16; Daniel Webster Council, Inc., 129 N.H. at 683.

## IV. CONCLUSION

For the reasons stated above, Concord Hospital did not vest Dr. Nichols or Sanborn with apparent authority. Accordingly, I grant the Hospital's motion for summary judgment (Doc. No. 19).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

June 30, 2003

cc: Leslie C. Nixon, Esq.
    Mark Hoffman, Esq.
    Lawrence S. Smith, Esq.
    Robert M. Larsen, Esq.
    Christine Desmarais-Gordon, Esq.