491 So.2d 695 (1986)
Donald DEMOLLE
v.
HORACE MANN INSURANCE COMPANY.
No. 86-CA-43.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
Rehearing Denied August 18, 1986.
*696 Leonard J. Cline, Metairie, for plaintiff-appellant.
Burt K. Carnahan, Lobman & Carnahan, Metairie, for defendant-appellee.
Before CHEHARDY, BOWES, and GRISBAUM, JJ.
GRISBAUM, Judge.
This is an appeal of a judgment denying the plaintiff coverage under the terms of the uninsured motorist provisions of his policy with the defendant (insurer), Horace Mann Insurance Company. We affirm.
We are called upon to determine whether the trial court erred in its finding that the mother of the plaintiff was acting as the "legal representative" of the named insured, under the provisions of La.R.S. 22:1406(D), when she selected lower uninsured motorist coverage for her son.

FACTS
On June 5, 1983, the plaintiff, Mr. Donald A. Demolle, while operating a motorcycle, was involved in a collision in Jefferson Parish with a 1974 Pontiac driven by Ms. Lynn G. Harris and owned by Dallas Harris. This accident was caused solely by the fault of Lynn G. Harris, who was uninsured at the time of the accident. Mr. Demolle suffered personal injuries, property *697 damage, and lost wages, apparently in excess of $100,000.
At the time of the accident, Mr. Demolle was the named insured in a policy of insurance issued by Horace Mann, which had stated limits of liability for bodily injury coverage in the amount of $100,000 per person and $300,000 per occurrence; for uninsured motorist coverage in the amount of $10,000 per person and $20,000 per occurrence; and for medical payments coverage of $5,000 per person. Horace Mann has paid, and Mr. Demolle has received, $10,000 under the uninsured motorist coverage and $5,000 under the medical payments coverage, plus interest and court costs which had accrued at the time of said payments.

PROCEDURAL HISTORY
On August 1, 1983, Donald Demolle filed suit against Lynn Harris and Horace Mann Insurance Company, disputing the amount of uninsured motorist coverage; the identity of the person who signed an uninsured motorist waiver selecting limits of $10,000, $20,000 for plaintiff, Donald Demolle; the validity of the alleged waiver form; and the authority or lack of authority of Mrs. Anita Demolle to execute a waiver. The trial court found (as fact) that Anita Demolle, Donald's mother, was the plaintiff's agent and had signed the uninsured motorist waiver, although Donald Demolle was the only named insured under the policy in question.

LAW
Our statutory law regarding uninsured motorist coverage in La.R.S. 22:1406 provides, in part, that:
D. The following provisions shall govern the issuance of uninsured motorist coverage in the state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. (Emphasis added)
Our jurisprudence, in interpreting La.R.S. 22:1406, has stated that this statute, in effect, writes into every automobile liability policy uninsured motorist coverage equal to the limits of liability. Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1203, 1205 (La.1985). More importantly, the insurer carries the burden of proving that any insured named in the policy rejected, in writing, the coverage equal to bodily injury coverage or selected lower limits. Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir.1985); Aramburo v. Travelers Ins. Co., 426 So.2d 260 (La.App. 4th Cir.1983), writ denied, 433 So.2d 161 (La.1983). Stated succinctly, the statute provides that to constitute a valid waiver of uninsured coverage or selection of lower limits, the waiver must be in writing and signed by the insured. Absent this affirmative act on the part of the insured, uninsured coverage is identical to the bodily injury liability limit provided in the policy. *698 Duhe v. Maryland Cas. Co., 434 So.2d 1193 (La.App. 1st Cir.1983).
The record shows Mrs. Demolle testified that she did not sign the document in question. However, the defendant called two expert witnesses, Mr. James Kelly and Mr. Robert Foley, both expert forensic document examiners, who were of the opinion that Mrs. Demolle "more probably than not" signed Donald Demolle's (her son, the named insured) name on the form. On the other hand, the plaintiff called Mr. Cy Courtney, an attorney specializing in document examination, who stated that, in his opinion, Anita Demolle did not sign the uninsured motorist waiver form. Based on the testimony of these witnesses, the trial court found that Anita Demolle did, in fact, sign Donald Demolle's name on the document. We note that proof by a "preponderance of the evidence" requires only that a litigant satisfy the court by sufficient evidence that the existence of a fact is more probable or likely than its nonexistence. Agoff v. City of Jean Lafitte, 464 So.2d 847 (La.App. 5th Cir.1985). Therefore, based on the record evidence and testimony, we cannot say the trial court was clearly wrong in its finding that Anita Demolle signed the waiver form. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We now turn to decide whether Anita Demolle's signing Donald Demolle's name constituted an act on behalf of the named insured in the policy. Under Louisiana law, an agency relationship is created by either express appointment of a mandatary under statute or by implied appointment arising from apparent authority. La. C.C. art. 2985, et seq.; Roberson Advertising Serv., Inc. v. Winnfield Life Ins. Co., 453 So.2d 662 (La.App. 5th Cir.1984). An agency relationship cannot be presumed, but it must be clearly established. "Implied authority" is actual authority which is inferred from the circumstances and nature of the agency. An agent is vested with the implied authority to do all of those things necessary or incidental to the agency assignment. Pailet v. Guillory, 315 So.2d 893 (La.App. 3d Cir.1975). On the other hand, as succinctly explained by the First Circuit Court of Appeal in AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La.App. 1st Cir. 1980):
The concept of apparent authority only comes into play when the agent has acted beyond his actual authority and has no permission whatsoever from his principal to act in such a manner. The principal will be bound for such actions if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal. The facts and circumstances of each case must be examined to determine the reasonableness of the third party's belief. One must look from the viewpoint of the third person to determine whether an apparent agency has been created.
The record shows that, at the time of the accident, Donald Demolle was a 27-year-old offshore supply boat captain living at 355 Lapalco Boulevard. He and other family members worked in their father's business, leasing boats to oil companies for use in connection with offshore rigs. Because this occupation necessarily involved being away from home days at a time, Donald and other family members had mail sent to their parents' address, 5037 Woodcrest Drive, where Donald's mother, Anita Demolle, would receive it. Horace Mann Insurance was given the Woodcrest Drive address to which correspondence addressed to Donald Demolle was sent.
Donald testified that he did not sign either the "addcar" form or the uninsured motorist waiver form, nor did he authorize anyone else to sign them. He claims to have requested "full coverage" when talking to Mr. James Gusman, the Horace Mann agent. Anita Demolle agreed she did not have authority to sign the uninsured motorist form but did state that she handles monthly bills for all of her sons, whose mail is sent to their parents' address. Donald Demolle maintained he always signs his own checks and documents *699 and only authorized his mother to write checks from their joint checking account to pay bills. On the other hand, he testified that his mother received the written Horace Mann estimate for the amount due and "she probably explained a little bit saying how much I had to pay a year on it andor how much every six months that I had to send them ... If it sounds good and she says I'm getting a fair deal on the insurance, then she writes out the checks because it was in her name, too, not just mine." Mrs. Demolle then paid the premium out of her own account. Upon receiving the insurance policy papers sent to his mother's address, Donald stated he "noticed over them" and put them in his car. This policy apparently reflected uninsured motorist coverage in the amount of $10,000 each person, $20,000 each accident, and $5,000 medical payments. Donald expressly agreed with the statement, "You pretty much allowed your mother to pay all of your bills and write all of your checks and take care of your affairs generally during 1982, isn't that true?"
Mr. James Gusman, an insurance agent for Horace Mann, testified that on January 5, 1982, Donald purchased a Toyota, called him from the dealership, and took out an "addcar" insurance policy. At that time, Mr. Gusman discussed the policy with Donald and his father, Patrick Demolle, over the telephone. He stated that both Donald and Patrick emphatically requested that the policy reflect the same uninsured motorist coverage that existed on the other cars, which was, in fact, 5-10.[1] Mr. Gusman then sent the policy application to Donald at the Woodcrest Drive address with a note asking "for Donald's signature and initials, which he obtained. He never met Donald Demolle, but he knew Anita Demolle handled all of Donald's business because of her son's job constraints.
As to the uninsured motorist waiver form itself, Mr. Gusman and Vice President of Casualty Services for Horace Mann, Mr. Harry Davis, both testified this form was sent from the Springfield, Illinois office directly to Donald Demolle at the supplied address, that being his parents' address. Of course, neither man saw Donald sign the form, but it was returned to the Springfield office with the purported signature of Donald Demolle. Mr. Davis correctly stated the rule set out in La.R.S. 22:1406(D) when he testified that to maintain the same uninsured motorist coverage as liability coverage, an insured could simply not return the waiver form. The statute requires some affirmative action by the insured before any lowering or waiving of uninsured motorist coverage is effected.
From these record facts, we find the trial court correctly held that an agency status existed between Donald Demolle and his mother. Such agency can properly be categorized as either "implied" or "apparent." It is "implied" because Donald authorized her to pay bills and take care of his business due to his working hours. Handling his insurance by paying premiums certainly carries the implication that she could take the action of signing the uninsured motorist form, especially after Donald requested the same uninsured motorist coverage, the amount of 5-10, as Patrick had previously obtained. In considering "apparent" authority of Mrs. Demolle, we consider the viewpoint of Horace Mann's Springfield office. Supplied with an address to which correspondence sent to Donald Demolle would ultimately reach him, the insurer sent forms to be signed by him only. These forms were subsequently returned with his purported signature. While the insurer in Springfield probably was unaware of an agency relationship at that address, it was certainly reasonable for Horace Mann to believe some one, if not the insured, at that address signed Donald Demolle's name and had authority to do so. Accordingly, the record supports the trial judge's findings that Anita Demolle signed the uninsured motorist waiver form selecting lower limits. Furthermore, she acted as agent for her son in signing *700 his name to the form, and such action does not violate the provisions of La.R.S. 22:1406(D), which requires such form to be signed by the named insured or his legal representative.
For the reasons assigned, the judgment of the trial court is affirmed; all costs of this appeal are to be assessed against the appellant.
AFFIRMED.
BOWES, J., dissents with written reasons.
BOWES, Judge, dissenting with written reasons.
Although I concede that the majority opinion is well thought out, logical and persuasive, I must still dissent.
It is undisputed that the insured (the plaintiff-appellant) did not sign the U.M. rejection/lower limit acceptance form. In my opinion, it is questionable whether it was even proven that Donald Demolle's mother, Anita, signed the form in his stead; only two of appellee's three experts could go so far as to state that it was "more probable than not" that Mrs. Demolle signed the form. Even this is somewhat questionable since they failed to take handwriting samples from anyone else.
Additionally, appellee's third expert and appellant's expert both testified that neither plaintiff nor his mother signed the U.M. waiver.
Finally, since Donald Demolle did not sign the form, in order for the form to be legally binding under R.S. 22:1406, it must be established that his "legal representative" signed for him. Even if, in arguendo, one assumes that Anita Demolle signed the form, no proof was ever offered that she was her son's legal representative. Although it was shown that Mrs. Demolle did act on her son's behalf in some affairs, this proof came after the fact. There was no evidence presented at trial that Horace Mann Insurance Company had knowledge of this, or that the insurance company had any reason to believe that Mrs. Demolle was her son's "legal representative" or that they ever relied on this.
Accordingly, I am of the opinion that the judgment of the trial court is clearly wrong and should be reversed.
NOTES
[1] In October 1982, Patrick and Anita Demolle selected the 100-300 uninsured motorist coverage instead of this existing 5-10 stated in their policy since April 18, 1980.