1 ¡WALTER J. ROTHSCHILD, Judge.
This case arises from a motor vehicle accident that occurred on October 10,1996. The plaintiff, Larry Shirley, was driving a vehicle owned by his employer, Mount Carmel Academy, when he was rear-ended by a vehicle driven by Hartland Adams. Mr. Shirley suffered serious injuries as a result of the accident. He filed a Petition for Damages against Mr. Adams’ insurer, Shelter Insurance Company, Mr. Adams individually, and Mount Carmel’s insurer, Centennial Insurance Company. Shelter tendered its policy limits of $25,000.00, and the plaintiff released Shelter and its insured, Mr. Adams, from the suit. Mr. Shirley contends that his injuries far exceed the amount tendered by Shelter. Therefore, he seeks uninsured/underin-sured motorist (“UM”) coverage from Centennial.
In 1998, the plaintiff and Centennial each filed Motions for Partial Summary Judgment on the issue of coverage. Centennial sought a summary judgment indicating that the UM limits provided under the Centennial policy were $20,000.00 per occurrence, which is the amount listed on the UM waiver/selection form. The plaintiffs sought summary judgment declaring that the UM limits were $1,000,000.00, which is the amount of the bodily injury liability limits. After a hearing, the trial court ruled in favor of the plaintiffs and declared that the Centennial policy provided UM limits of $1,000,000.00. Centennial appealed, and this Court reversed the ruling of the trial court, finding that based on the record ^before it, there were genuine issues of material fact regarding whether James Barnes, who signed the UM waiver/selection form, had the authority to do so.
The parties filed a list of “Undisputed Established Facts” in an effort to eliminate any material issues of fact. Thereafter, they each filed a Motion for Partial Summary Judgment once again on the issue of coverage. After a hearing, the trial court again granted summary judgment in favor of the plaintiff, declaring the UM limits under the Centennial policy to be $1,000,000.00, and denied the Motion for Summary Judgment filed by Centennial. It is from this ruling that Centennial appeals. For the reasons which follow, we affirm.

FACTS

At the time of the accident, Mount Car-mel Academy was a member of the Religious and Charitable Risk Pooling Plan of the Christian Brothers Risk Pooling Trust (the “Trust”) and participated in the Religious and Charitable Risk Pooling Trust Plan of the Brothers of Christian Schools and Affiliates (the “Plan”). The Plan is a program of risk pooling for protection against the risk of financial loss due to the imposition of liability. The Trust offers its beneficiaries the opportunity to purchase automobile insurance coverage through insurance companies that provide fronting policies to the Trust, such as Centennial.
At the time of the accident, Mr. Shirley was in the course and scope of his employment with Mount Carmel and the vehicle he was driving was covered by a Centennial insurance policy issued to the Trust with bodily injury limits of $1,000,000.00, effective August 1, 1996 through August 1, 1997. The 1996 policy did not include a UM waiver/selection form, but the Centennial policy issued in 1995, effective August 1,1995 through August 1, 1996, did contain a UM waiver/selection form, and the 1996 *595 policy was a renewal policy. Therefore, the UM form in question was issued with the 1995 policy.
The Trust has a board meeting each year to determine the terms of the automobile coverage to be made available under the Plan. At the board meeting in July of 1995, Michael Bemi, an employee of Arthur J. Gallagher & Go., which is an independent insurance broker, made a presentation to the Board of Trustees regarding insurance coverage offered by Centennial. After the July 1995 meeting, the Board of Trustees voted to accept Mr. Bemi’s ^proposal and they delegated to James Barnes, the Plan Administrator of the Trust, the authority to accept the Centennial policy proposed by Mr. Bemi in accordance with the directives given in the July 1995 meeting. Mr. Barnes was to serve only as a functionary to sign whatever documents were necessary to carry out the decision regarding insurance coverage that was already made by the Board of Trustees at the July 1995 meeting. Mr. Barnes did not have the authority to make any decisions regarding UM limits to be selected for the Trust.
Prior to Mr. Bemi’s presentation to the Board, he had negotiated with Gale Smith, a Senior Special Accounts Underwriter for Centennial, that if the Board of Trustees accepted the proposal, the Centennial policy would carry “minimum” or “statutory” UM limits, but he did not inform the Board of Trustees of this at the meeting. Rather, he recommended that the Trust obtain coverage consistent with the Plan Document, which provides that UM coverage is the minimum allowable per state statute, not to exceed $250,000.00 per person and limited to $1,000,000.00 per accident. The specific dollar amount of UM coverage to be provided for each state under the Centennial policy was not discussed or approved at the meeting and the option of complete rejection of UM coverage was not mentioned. Furthermore, the Board was not informed that specific forms would need to be signed regarding UM coverage, and the Board never specifically instructed Mr. Barnes to sign UM selection forms.
Centennial delivered the policy to Mr. Bemi, including all endorsements and UM selection forms for each state. The UM selection form signed by Mr. Barnes provided three UM coverage selections. The first selection was UM coverage equal to the policy’s bodily injury limits. The second choice was UM coverage at higher or lower limits than the bodily injury coverage. The third choice was complete rejection of UM coverage. A staff member at Gallagher used the figures from an endorsement provided by Centennial and filled in the blank UM forms for each state. On the form for Louisiana, the Gallagher employee selected the second option which provided for lower limits, and she placed “$20,000.00” in the blank next to this option. Mr. Barnes signed the form for Louisiana along with the forms for all states.

IfJLAWAND DISCUSSION

On appeal, Centennial argues that the trial court erred in granting the plaintiffs Motion for Partial Summary Judgment and denying Centennial’s Motion for Partial Summary Judgment, because it argues that UM coverage provided under the policy was $20,000.00, not $1,000,000.00.
In Louisiana, summary judgment is now favored and it shall be used to secure the just, speedy, and inexpensive determination of all actions, except those specifically excluded in LSA-C.C.P. Art. 969. LSA-C.C.P. Art. 966(A)(2). Appellate courts review summary judgments de novo applying the same criteria as the trial court to determine whether summary judgment is appropriate. Herndon and Associates v. Gettys, et al., 95-206 (La.App. 5 Cir. *596 7/25/95), 659 So.2d 842, 844. A summary-judgment shall be rendered if the pleadings, depositions, interrogatory responses, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B). Material facts are those that have the potential to insure or preclude recovery, affect a litigants ultimate success, or determine the outcome of a legal dispute. Rambo v. Walker, 96-2538 (LaApp. 1 Cir. 11/7/97), 704 So.2d 30, 32. Accordingly, we undertake a de novo review of this appeal.
A valid selection of UM limits lower than the liability limits must be in writing and must be signed by the insured or his authorized representative. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213, 1214; Perez v. Progressive Ins. Co., 99-956 (La.App. 5 Cir. 1/25/00), 751 So.2d 1014, 1015. The insurer bears the burden of proof that a rejection or a selection of lower limits has been legally perfected. Id.
In the present case, the parties agree that only the Board of Trustees had the authority to decide the UM limits for the Trust. Neither Mr. Bemi nor Mr. Barnes had the authority to select the UM limits without the approval of the Board. Although Mr. Bemi recommended that the Trust obtain coverage consistent with the Plan document, the specific amount of UM coverage was never discussed with the Board. Mr. Bemi and Ms. Smith agreed that the Centennial policy would carry “minimum” or “statutory” UM limits if the Board accepted Mr. LBemi’s proposal; however, this was never discussed with the Board. The Board was never informed that Louisiana law allows selection of UM limits equal to bodily injury liability limits, lower or higher limits, or complete rejection of UM coverage. Furthermore, the Board was never informed that if the UM form was left unsigned, the UM limits would automatically be equal to the bodily injury liability limits.
Prior to signing the UM waiver/selection forms for each state, Mr. Barnes did not know what UM figures would apply to each state, and he assumed that the “$20,-000.00” figure that had been added to the form was accurate. However, neither Mr. Barnes nor the Board selected “$20,-000.00” as the amount of UM coverage. It was pre-marked on the form by an employee of Gallagher using figures provided by Centennial.
In Henson v. Safeco Ins. Co., 585 So.2d 534 (La.1991), the insurer presented a completed application to the insured providing for rejection of UM coverage. The Louisiana Supreme Court noted that the insurer required Henson to affirmatively change the form in order to obtain UM coverage. However, it is the rejection of UM coverage that must be the affirmative act of the insured. The Court further noted that the insured’s only affirmative act was signing the application and that he did not place the “X” in the UM rejection box or initial it. The Court found that there was no express, affirmative act on the part of the insured which clearly and unambiguously rejected UM coverage, as required by LSA-R.S. 22:1406(D)(1)(A). Therefore, the Court held that the rejection of UM coverage on the form was invalid and that UM coverage was read into the policy in the amount provided for bodily injury coverage.
An insured must be allowed the opportunity to make an informed and meaningful selection of UM coverage, or it will be read into the policy. Tugwell v. State Farm, 609 So.2d 195, 198-199; Doyle v. Titan Indem. Co., 629 So.2d 516, 520 (La.App. 5 Cir.1993). In Tugwell, supra at 199, the LA Supreme Court stated, “[implicit in the statute’s requirement that the insurer make available the option of *597 selecting lower limits is the idea that the insured be made aware of that option.” In this case, Mr. Bemi’s proposal to the Board of Trustees did not include discussion regarding UM options, and the form signed by 17Mr. Barnes did not allow selection of UM limits because it had been pre-marked by one of Gallagher’s employees. Mr. Barnes did not place the “X” in the lower limits box or the “$20,000.00” in the blank, and he did not initial the form next to the “X.” Furthermore, there is no indication that the Board was provided with any information regarding UM options pri- or to the signing of the UM forms in order to make an informed decision or to be aware that there were UM options that the Board could choose. The parties agree that the Board did not see the Centennial policy or the UM selection form and they were not informed of what choices the form would provide.
Clearly, the Board of Trustees was not afforded the opportunity to make a meaningful and informed selection of UM coverage. In fact, the Board made no decision at all with regard to UM coverage under the Centennial policy. Therefore, Mr. Barnes was not authorized by the Board to sign the UM waiver/selection form on their behalf. Accordingly, pursuant to LSA-R.S. 22:1406(D), the UM limits provided under the Centennial policy are equal to the bodily injury liability limits, i.e. $1,000,000.00.
For the reasons set forth above, we affirm the summary judgment in favor of the plaintiffs, providing that UM limits under the Centennial policy are $1,000,000.00, and the denial of Centennial’s Motion for Partial Summary Judgment.

AFFIRMED.