Merrimack
No. 2010-303

YVETTE BOUFFARD

v.

STATE FARM FIRE & CASUALTY COMPANY

Argued: June 9, 2011
Opinion Issued: August 11, 2011

*Bernstein Shur, P.A.*, of Manchester (*Andru H. Volinsky* and *Christopher G. Aslin* on the brief, and *Mr. Aslin* orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for the defendant.

DUGGAN, J. The plaintiff, Yvette Bouffard, appeals the Trial Court's (*Smukler*, J.) denial of her request for a declaratory judgment that she is entitled to uninsured motorist (UM) coverage under her umbrella insurance policy issued by the defendant, State Farm Fire & Casualty Company (insurer). The insurer cross-appeals, alleging that the Trial Court (*Conboy*, J.) erred in denying its earlier motion for summary judgment. We affirm.

The record supports the following facts. The plaintiff and her husband, Percy Bouffard, have been married for forty-eight years. From 1995 to 2005, they obtained their family insurance policies from Cyr and Rogers Agency. During this time, they would either go to Cyr and Rogers together to handle insurance transactions or the husband would go alone and the

plaintiff would review the policies he had purchased. They had an umbrella policy through Cyr and Rogers that included $1 million in UM coverage.

In late 2004, the Bouffards decided to switch insurance providers. On January 11, 2005, they went together to the Concord office of Yacyshyn State Farm Insurance (the insurance agency) to transfer their homeowners, automobile, and umbrella insurance policies to State Farm. When they arrived, they discovered that the building did not have wheelchair access. As a result, the plaintiff, who suffers from multiple sclerosis and was confined to a wheelchair, could not enter. They agreed that the plaintiff would remain in the car while the husband entered the insurance agency to complete the necessary paperwork. The plaintiff authorized her husband to "get it done." She later testified that this meant that he should complete the necessary paperwork to obtain the insurance policies.

Once inside, the husband met with a customer service representative and completed applications for automobile, homeowners, and umbrella insurance policies. The umbrella policy application included a provision that stated: "In keeping with the laws of my state, I have been offered the opportunity to purchase Uninsured/Underinsured Motor Vehicle Coverage, and I reject the opportunity to purchase this option as part of this application." If the applicant chose to reject UM coverage, he could then check a box to either reject it for all vehicles or for recreational vehicles only.

The representative discussed these UM coverage options with the husband and asked him to sign in the space below the UM provision. At the hearing, the husband testified that he told the representative that he wished to reject UM coverage only for recreational vehicles and that the representative mistakenly checked the box rejecting UM coverage on all vehicles. He also testified that when he signed the UM provision, he could not read the small print and believed that the representative followed his request to reject UM coverage for recreational vehicles only. The representative testified that while she could not specifically recall her interaction with the husband, her normal practice was to explain UM coverage to the applicant and ask the applicant whether he wished to reject such coverage.

The representative then informed the husband that she needed to speak with the plaintiff and obtain her signature. Inside the Bouffards' truck, the representative showed the plaintiff all three applications and provided her the opportunity to read all three, including the umbrella application. The plaintiff testified that her husband's signature was on the umbrella application when she read it. She also testified that she had the opportunity to review the application and did not point out any mistakes on it. However, the representative never asked her to sign it.

The insurer subsequently issued the Bouffards an automobile policy, a homeowners policy, and an umbrella policy, which were delivered to their home. The plaintiff testified that she read the umbrella policy when it arrived and believed that it included UM coverage.

On August 4, 2006, the Bouffards were involved in an automobile accident and the plaintiff suffered bodily injuries. She recovered a total of $250,000 from the tortfeasor's insurer and her UM coverage under her personal automobile policy. Because her damages exceeded this sum, the plaintiff sought UM coverage under the umbrella policy. The insurer, however, denied the claim pursuant to RSA 264:15 (2004) (amended 2007 & 2009) because UM coverage was rejected on the application.

The plaintiff then brought a declaratory judgment action seeking a declaration that she was entitled to UM coverage under the umbrella policy because she did not personally reject such coverage. The parties filed cross-motions for summary judgment. The trial court ruled that the husband's rejection of UM coverage on the application was ineffective as a matter of law to reject it for the plaintiff. The court concluded that the insurer was obligated to provide the plaintiff with UM coverage unless it could prove that she personally rejected such coverage. The court, however, denied both motions for summary judgment because factual issues re- mained as to whether the husband acted as the plaintiff's agent and whether the plaintiff later ratified his acts.

The trial court subsequently held a hearing and determined that the defendant sustained its burden to prove the factual elements of agency. The court found that the plaintiff authorized her husband to go into the insurance agency and purchase insurance for both of them and that the husband agreed to do so. The court also determined that the plaintiff exerted some control over her husband's actions and ratified his decision when she failed to object after reviewing the application in the car or after the policy arrived by mail. Therefore, the court concluded, the defendant met its burden to prove "that it was within the scope of Mr. Bouffard's agency to make decisions about the insurance application, including whether or not to reject [UM] coverage." The plaintiff then appealed that decision and the defendant cross-appealed the trial court's initial summary judgment ruling.

The plaintiff contends that the trial court erred in interpreting and applying RSA 264:15, which, in pertinent part, provides:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons

insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. . . . For the purposes of this paragraph umbrella or excess policies that provide excess limits to policies described in RSA 259:61, shall also provide uninsured motorist coverage equal to the limits of liability purchased, *unless the named insured rejects such coverage.*

(Emphasis added.)

The plaintiff argues that because RSA 264:15 expressly provides that the named insured must reject such coverage, an agent may only reject UM coverage if the principal expressly and knowingly authorizes such rejection. While the existence of an agency relationship is ordinarily a question of fact, *see Herman v. Monadnock PR-24 Training Council*, 147 N.H. 754, 758 (2002), the plaintiff argues that the trial court erred as a matter of law because she contends that "a general agency relationship alone is not legally sufficient to show a knowing rejection of [UM] coverage." Thus, before determining whether the trial court correctly ruled as a factual matter that the husband acted as the plaintiff's agent, we first decide whether the trial court applied the correct law regarding an agent's ability to reject UM coverage on behalf of his principal. *See ACAS Acquisitions v. Hobert*, 155 N.H. 381, 400 (2007) ("while we defer to the trial court's factual findings, provided there is evidence in the record to support them, we review its application of the law to the facts *de novo*").

Relying upon *Shirley v. Centennial Insurance Co.*, 829 So. 2d 593 (La. Ct. App. 2002), and *Braden v. State Farm Mutual Automobile Insurance Co.*, 637 N.E.2d 109 (Ohio Ct. App. 1994), the plaintiff argues that common law principles of agency and contract do not apply to UM coverage. In *Shirley*, the board of trustees of a charitable organization delegated authority to the trust's plan administrator to sign the required documents to purchase an automobile insurance policy. *Shirley*, 829 So. 2d at 595. The administrator ultimately selected a lower UM coverage limit than the policy's bodily injury limit. *Id.* While an insurance broker initially proposed to the board a policy that provided for only the minimum UM coverage limits permitted by law, the broker did not expressly discuss rejection of full UM coverage with the board. *Id.* Thus, the court determined that the plan administrator's selection of a lower UM limit was not binding on the board because the board did not have the opportunity to make "a meaningful and informed selection" of UM coverage. *Id.* at 597.

However, the court did not conclude that a principal could never authorize his agent to reject UM coverage. Rather, it decided, based upon

the facts before it, that the board had not authorized the plan administrator's acts. *Id.* Indeed, in an earlier case, the same court concluded that either an implied or apparent agency status existed between a mother and her son, so that the mother's rejection of UM coverage was binding upon the son. *Demolle v. Horace Mann Ins. Co.*, 491 So. 2d 695, 699 (La. Ct. App. 1986); *see also Freeman v. National Automotive Ins. Co.*, 916 So. 2d 279, 283 (La. Ct. App. 2005) (recognizing that an agent may have apparent authority to reject UM coverage but declining to make such a finding where there was no evidence that the daughter had any authority to sign a UM rejection form on behalf of her father). Accordingly, we disagree with the plaintiff that *Shirley* rrejected the application of common law agency principles to UM coverage.

We are also unpersuaded by the plaintiff's reliance upon *Braden.* In that case, the named insured obtained an automobile policy with the assistance of her mother and was subsequently injured in an accident. *Braden*, 637 N.E.2d at 110. The mother discussed different insurance options in the daughter's presence and then signed the insurance application and a document reducing UM coverage from the policy limit to a lesser amount. *Id.* The agent never explained the policy or the UM document to the daughter and the daughter did not sign the application. *Id.* The court determined that only an expressly authorized agent could reject UM coverage on behalf of the insured. *Id.* at 111. While the insurer also argued that the daughter ratified the mother's act by paying the policy premiums, the court concluded that any ratification of an agent's rejection of UM coverage must be knowing and express. *Id.*

However, after determining that implied or apparent authority was insufficient to reject UM coverage in *Braden, see id.*, the same court reached a contrary conclusion in a later case when it considered whether an agent was impliedly authorized to reject UM coverage or created an appearance of authority to "justify an agency by estoppel," *Owens v. State Farm Mut. Auto. Ins. Co.*, 678 N.E.2d 281, 284 (Ohio Ct. App. 1996). While the court ultimately concluded that the facts did not support an implied agency or agency by estoppel, it nonetheless recognized that UM coverage could be rejected by an agent based upon a non-express agency relationship. *See id.* In light of this contradictory case law, we do not find the plaintiff's reliance upon *Braden* to be persuasive.

██ We see no reason why settled principles of agency law should not apply to the rejection of UM coverage. The plaintiff is correct that the legislature has provided a statutory right to UM coverage unless rejected by the "named insured." However, RSA 264:15 does not clearly indicate any legislative intent to alter common law agency principles. *See State v.*

*Demesmin,* 159 N.H. 595, 599 (2010) ("we will not interpret a statute to abrogate the common law unless the statute clearly expresses that intent" (quotation omitted)). Moreover, we decline to allow a principal to accept the benefits of an insurance policy as negotiated by an agent on the one hand, but at the same time claim that one unbeneficial aspect of the policy should not apply. *See Messerly v. State Farm Mut. Auto. Ins.,* 662 N.E.2d 148, 151 (Ill. Ct. App. 1996). Such a result "would permit [a principal] to accept the benefit of the bargain her [agent] made on her behalf but not the burden." *Id.* Accordingly, we conclude that an agent may waive UM coverage on behalf of a principal so long as the insurer proves the existence of an agency relationship, whether actual or apparent. *See State Farm Mut. Auto. Ins. Co. v. Noble,* 854 N.E.2d 925, 932 (Ind. Ct. App. 2006); *Nationwide Mut. Ins. Co. v. Prioleau,* 597 S.E.2d 165, 168 (S.C. Ct. App. 2004); *Goode v. Daugherty,* 694 S.W.2d 314, 317 (Tenn. Ct. App. 1985).

Having concluded that an agent may waive UM coverage on behalf of the principal, we next review the trial court's finding of an agency relationship between the plaintiff and her husband. As noted, the existence of an agency relationship is a question of fact. *Dent v. Exeter Hosp.,* 155 N.H. 787, 792 (2007). We will not disturb the trial court's findings unless they are unsupported by evidence or are erroneous as a matter of law. *See Demetracopoulos v. Strafford Guidance Ctr.,* 130 N.H. 209, 213 (1987). The trial court's findings are supported by the evidence if a reasonable person could have reached the same decision based upon the evidence before it. *See id.*

"[T]he necessary factual elements to establish agency involve: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions." *Dent,* 155 N.H. at 792 (quotation omitted). The trial court determined that the insurer met its burden of proving these three elements, and, thus, concluded that the plaintiff granted her husband actual authority to reject UM coverage on her behalf.

"The granting of actual authority and consent to act with such authority may be either express or implied from the parties' conduct or other evidence of intent." *Id.* "Express authority arises when the principal . . . explicitly manifests its authorization of the actions of its agent." *Demetracopoulos,* 130 N.H. at 213; *see also* RESTATEMENT (SECOND) OF AGENCY § 7 comments *a-c,* § 26, comments *a-c* (1958). Implied authority, on the other hand, follows as a reasonable incident or construction of the terms of express authority, or results from acquiescence by the principal in a

course of dealing by the agent. *Demetracopoulos*, 130 N.H. at 215. Such authority can arise from words used, from customs, or from the relations of the parties. *See* RESTATEMENT (SECOND) OF AGENCY § 7 comment *c*; *see also Noble*, 854 N.E.2d at 932.

■ We hold that the record supports the trial court's findings of an agency relationship based upon implied actual authority. With regard to the first element, the trial court found that the plaintiff authorized her husband to acquire insurance on her behalf by telling him to "get it done." The plaintiff testified that this statement reflected her intent that her husband should purchase insurance for both of them. Additionally, in the past, the plaintiff and her husband had discussed the insurance coverage they wished to purchase and the husband had then obtained the policy on behalf of both parties. *See Noble*, 854 N.E.2d at 932 (determining that where the husband had previously purchased insurance on the wife's behalf, a reasonable inference could be drawn that he had implied authority to reject UM coverage on her behalf).

■ The record also supports the trial court's finding that the husband consented to act as the wife's agent. He entered the insurance agency with the expectation that he would purchase insurance on his wife's behalf. He then completed the insurance application, including the section rejecting UM coverage. While the plaintiff contends that her husband told the representative that he only wanted to reject UM coverage for recreational vehicles, the trial court found that:

> The court is not persuaded by [the husband's] testimony that he merely intended to reject [UM] coverage on recreational vehicles because [the representative] testified that it was her practice to explain [UM] coverage, and there is no dispute that [the husband] was provided with an opportunity to review the application before he signed it.

The trier of fact is in the best position to judge the credibility of witnesses, and the trial court was well within its discretion to reject the husband's testimony. *See Certain Underwriters at Lloyd's London v. Home Ins. Co.*, 146 N.H. 740, 744 (2001); *see also Drucker's Case*, 133 N.H. 326, 331 (1990) (explaining that the trier of fact "may accept or reject in whole or in part any testimony of any witness or party" (quotation omitted)). Accordingly, we uphold the trial court's finding that the husband consented to obtain insurance on the plaintiff's behalf.

■ ■ Finally, the record supports the trial court's finding that the insurer met its burden of proving that there was an understanding that the plaintiff would exert some control over the husband's actions. "Control by

the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do." *Dent*, 155 N.H. at 792. Here, the trial court found that the plaintiff and her husband discussed the coverage they wanted to purchase prior to arriving at the agency. While the plaintiff contends that she only authorized her husband to obtain the same UM coverage they had in their prior umbrella policy, the trial court chose not to rely upon this testimony. *See In re Guardianship of Luong*, 157 N.H. 429, 439 (2008) ("the trier of fact is in the best position to measure the persuasiveness and credibility of evidence and is not compelled to believe even uncontroverted evidence" (quotation and brackets omitted)). Rather, it found that the plaintiff authorized her husband to make decisions regarding the insurance application and that her husband acted within the scope of his agency in rejecting UM coverage.

Moreover, the plaintiff had an opportunity to review the policy both inside her vehicle immediately after her husband completed it and again when it was mailed to her home. The plaintiff argues that a principal's ratification of an agent's rejection of UM coverage must be express and knowing. Even if we were to agree with the plaintiff that her actions did not constitute ratification, implied authority may be conferred by acquiescence of the principal in the actions of the agent. *See Demetracopoulos*, 130 N.H. at 215; *see also Noble*, 854 N.E.2d at 932 (explaining that a reasonable inference of conferring implied authority could be drawn where the wife failed to complain upon receiving an insurance declarations page in the mail that did not include UM coverage). Accordingly, we conclude that the evidence supports the trial court's finding of an agency relationship.

Finally, the plaintiff argues that the trial court improperly placed the burden of proof on her rather than the insurer. *See Colony Ins. Co. v. Dover Indoor Climbing Gym*, 158 N.H. 628, 630 (2009) ("The burden of proving that no insurance coverage exists rests squarely with the insurer."). The trial court's order directly contradicts the plaintiff's assertion. Indeed, the trial court explicitly found that "State Farm has sustained its burden of proving the necessary factual elements of agency." Additionally, the plaintiff assigns error to the trial court's reliance upon her failure to notify the insurer that the policy contained an error after she reviewed it. However, the court's use of such evidence does not constitute an improper shift of the burden of proof. Rather, the court considered this evidence, along with all of the other evidence presented by the insurer, in determining that the insurer met its burden of proving an agency relationship. Accordingly, the plaintiff's argument is without merit.

Because we conclude that the record supports the trial court's conclusion that the husband acted as his wife's agent in rejecting UM coverage, we need not determine whether the trial court erred in denying the insurer's initial motion for summary judgment.

*Affirmed.*

DALIANIS, C.J., and LYNN, J., concurred.